UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BUNTHOEUN PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00348-JAW |
| | ) | |
| SHUCKS MAINE LOBSTER LLC | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR CONDITIONAL CERTIFICATION AND
PROVISION OF NOTICE UNDER 29 U.S.C. § 216(b)**

In this Fair Labor Standards Act (FLSA) and Maine wage and hour law case, the named plaintiff moves for conditional certification of her FLSA claim as a collective action. The Court grants the motion because the plaintiff has made a sufficient factual showing that she and other employees suffered from a common unlawful plan, despite the fact that the plaintiff has not identified other interested potential class members. For purposes of conditional certification and notice only, the Court designates the plaintiff's earliest employment date as the start date of the proposed class period. The Court reserves ultimate judgment on the issue of equitable tolling.

I.     **BACKGROUND**

A.     **Procedural History**

On August 24, 2015, Bunthoeun Perez filed a class and collective action complaint against Shucks Maine Lobster LLC ("Shucks Lobster") and its owner, John

Hathaway; Ideal Global Solutions LLC ("IGS") and its principal, Senghap Roeun; and Casco Temp Agency LLC ("Casco Temp") and its principal SoLang Ung. *Class and Collective Action Compl.* (ECF No. 1). Shucks Lobster and John Hathaway filed an answer on October 15, 2015, *Answer* (ECF No. 5), and Casco Temp filed its answer on November 3, 2015. *Answer* (ECF No. 7). Ms. Perez was unable to serve Mr. Ung with process and therefore voluntarily dismissed him as a party without prejudice. *Notice of Dismissal* (ECF No. 20). Ms. Perez successfully served IGS and its principal, Mr. Roeun, but both failed to answer. On December 9, 2015, Ms. Perez moved for entry of default against IGS and Mr. Roeun. *Mot. for Entry of Default* (ECF Nos. 16, 17). The Clerk of Court granted the motions for entry of default on December 10, 2015. *Order Granting Mot. for Entry of Default* (ECF No. 23).

On January 11, 2016, Magistrate Judge Rich held a telephone conference to address a proposed scheduling order. *R. of Hr'g and Order Re: Scheduling and Status* (ECF No. 32). Casco Temp failed to appear. *Id.* at 2. The same day, the Magistrate Judge issued an order requiring Casco Temp to show cause why the Court should not enter default against it. *Order to Show Cause* (ECF No. 33). Casco Temp failed to respond, and the Magistrate Judge ordered Casco Temp in default on January 27, 2016. *Order Defaulting Def.* (ECF No. 34).

On April 18, 2016, Ms. Perez filed a consent motion for leave to file an amended complaint against Shucks Lobster and its owner, John Hathaway ("the Shucks Defendants"). *Consent Mot. for Leave to Amend Compl.* (ECF No. 38). The following day, the Magistrate Judge granted Ms. Perez' motion without objection. *Order*

*Granting Mot. for Leave to File Am. Compl.* (ECF No. 39).   Ms. Perez filed her Amended Complaint on April 19, 2016.  *Am. Compl.* (ECF No. 40).  On April 29, 2016, Ms. Perez filed the instant motion for conditional certification of a class under 29 U.S.C. § 216(b).  *Mot. for Conditional Certification and Provision of Notice Under 29 U.S.C. § 216(b)* (ECF No. 41) (*Pl.'s Mot.*).  The Shucks Defendants filed an opposition on May 19, 2016.  *Opp'n to Mot. for Conditional Certification and Provision of Notice Under 29 U.S.C. § 216(b)* (ECF No. 43) (*Defs.' Opp'n*).  Ms. Perez replied on June 2, 2016.  *Reply in Supp. of Mot. for Conditional Certification and Provision of Notice Under 29 U.S.C. § 216(b)* (ECF No. 44) (*Pl.'s Reply*).

### B.    Alleged Facts

Shucks Lobster is a seafood processing facility in Richmond, Maine.  *Am. Compl.* ¶¶ 18–19.  Ms. Perez worked as a lobster picker at the Shucks Lobster facility for approximately three months beginning in May 2012 and another three weeks in the summer of 2015.  *Id.* ¶ 31; *Pl.'s Mot.* Attach 1 *Decl. of Buntheoun Perez* ¶¶ 4–5 (ECF No. 41) (*Perez Decl.*).  In her capacity as a lobster picker, Ms. Perez shucked cooked lobster meat from its shell.  *Perez Decl.* ¶ 3; *Am. Compl.* ¶ 30.  Shucks Lobster employed Ms. Perez and other lobster pickers through various temporary agencies ("temp agencies"), including Casco Temp and IGS, *Am. Compl.* ¶ 20, but according to Ms. Perez, Mr. Hathaway held ultimate control over the lobster picker's operations, hours, and pay rates.  *Id.* ¶¶ 6–7, 23–25, 34.  Ms. Perez asserts that the different temp agencies maintained substantially identical employee rosters and employment policies.  *Am. Compl.* ¶ 5.

3

Ms. Perez states that Shucks Lobster paid her and the other lobster pickers according to a "piece rate" based solely on the weight of the lobster they processed. *Am. Compl.* ¶ 33. However, Ms. Perez asserts that the piece rate did not account for other compensable activities that she and the other lobster pickers performed throughout the workday. *Id.* ¶ 56. For instance, the lobster pickers typically had to arrive by 6 A.M. but often had to wait for shipments of lobsters and linger while the lobsters cooked. *Id.* ¶¶ 53–54. In addition, the lobster pickers were required to pass through a "clean room" every time the pickers entered or left the room where the shucking occurred, including for breaks, lunch, or any other reason. *Id.* ¶ 55. The "clean room" process took between five and ten minutes. *Perez Decl.* ¶ 12. In total, Mr. Perez alleges that she worked between eight and nine hours per day, six days per week. *Perez Decl.* ¶ 14; *Am. Compl.* ¶ 58. However, neither she nor the other lobster pickers received overtime pay. *Am. Compl.* ¶ 60. Ms. Perez contends that in its contracts with the temp agencies, Shucks Lobster specified that the lobster pickers were not entitled to overtime. *Id.* ¶ 59.

Ms. Perez estimates that she worked with between ten and twenty lobster pickers each day. *Perez Decl.* ¶ 8. She further estimates that, over the course of her employment at Shucks Lobsters, she saw between thirty and forty different people working as lobster pickers. *Id.* ¶ 9. She alleges that all of the lobster pickers shared similar job duties, and that their pay rates and employment circumstances were substantially the same. *Pl.'s Mot.* at 3. Ms. Perez claims that she spoke with other lobster pickers about the lawsuit but that they have not yet joined the case because

they fear retaliation. *Perez Decl.* ¶ 15. She attests that many of the lobster pickers are seasonal immigrants who speak Spanish or Khmer, and, according to Ms. Perez, they are unaware of their rights to overtime and to protection from retaliation. *Id.* ¶ 16. She alleges that the Shucks Defendants did not post notice of federal wage provisions, in violation of 29 C.F.R. § 516.4. *Perez Decl.* ¶ 5; *Pl.'s Mot.* at 6.

## II.   THE PARTIES' POSITIONS

### A.   The Plaintiff's Motion

Ms. Perez alleges that the FLSA , 29 U.S.C. § 216(b), entitles her and the other lobster pickers to overtime for the all hours they worked in excess of forty hours per week, as well as "gap time" for the time they engaged in compensable activities without pay. *Pl.'s Mot.* at 1. She requests the Court conditionally certify the lobster pickers as a collective action and approve an "appropriate notice to be both sent to all potential opt-in members, handed to all current employees, and prominently posted" at Shucks Lobster's facility. *Id.*

### 1.   FLSA Conditional Certification

To begin, Ms. Perez lays out the standard for conditional certification pursuant to § 216(b). *Id.* at 5. She explains that certification of collective actions under the FLSA occurs in two parts. *Id.* First, the Court determines whether to "conditionally certify" the action and provide notice to potential class members. *Id.* This occurs early in the case and is based on the pleadings and any affidavits. *Id.* The standard at this stage is "fairly lenient." *Id.* (quoting *Saunders v. Getchell Agency*, No. 1:13-cv-00244-JAW, 2014 WL 580153, at *5 (D. Me. Feb. 12, 2014)). The named plaintiff

must show a reasonable basis for the claim that there are other similarly situated employees who might participate in the case. *Id.* Second, upon the conclusion of discovery, the Court may reassess the "conditional certification to determine whether it is appropriate for the action to continue as a collective action. *Id.*

Ms. Perez argues that she satisfies the "lenient" standard for conditional certification. *Id.* at 6. She defines the class she seeks to conditionally certify as "[a]ll current and former employees of Shucks Lobster and/or any agent hired by Shucks Lobster since May 2012 who worked shucking cooked lobsters at Shucks Maine's facility in Richmond, Maine and who worked, when all waiting time is included, more than forty (40) hours per week." *Id.* at 8. According to Ms. Perez, all of the potential class members worked as lobster pickers in the same location under nearly identical circumstances. *Id.* Moreover, the Shucks Defendants failed to pay all of the lobster pickers for the time they spent in similar compensable activities, such as waiting for lobster to arrive, waiting while the lobster cooked, and passing through the "clean room" as they entered and exited the shucking room. *Id.* They also failed to pay all of the lobster pickers overtime when they worked more than forty hours per week. *Id.* Accordingly, Ms. Perez argues that these similarities satisfy the lenient standard of conditional certification. *Id.*

Ms. Perez also offers possible reasons why other lobster pickers have not joined her lawsuit. First, the Shucks Defendants engaged different temp agencies over the years to "create a buffer between [the Shucks Defendants] and the potential class members." *Id.* at 7. This hiring practice effectively dispersed the lobster pickers

across multiple agencies and has made it difficult for Ms. Perez to access potential class members. *Id.* Additionally, Ms. Perez asserts that other lobster pickers are hesitant to join the lawsuit because they are not aware of their rights to overtime and to protection from retaliation. *Id.* According to Ms. Perez, this lack of awareness stems, in part, from the fact that many of the lobster pickers are seasonal immigrant laborers who lack knowledge of labor and employment law, and from the fact that the Shucks Defendants failed to provide proper notice of employee rights under the FLSA. *Id.* Ms. Perez is confident, however, "that the proposed notice will serve the dual purpose of informing all potential class members of both this lawsuit and their rights under the FLSA." *Id.*

### 2.    Notice

Ms. Perez requests the Court to approve the draft notice and opt-in forms that she attached to her motion. *Id.* at 8–9. She also requests that the Court order the Shucks Defendants to prominently display the notice in the shucking and the break rooms at the Richmond facility and to distribute paper copies to all current lobster pickers. *Id.* at 8. Additionally, she urges the Court to order the Shucks Defendants to provide her with a computer readable data file containing the names and last known addresses of all potential class members as defined in the Court's certification order. *Id.*

### 3.    Tolling the Statute of Limitations

Ms. Perez explains that, unlike Rule 23, § 216(b) does not toll the claims of opt-in plaintiffs until they actually file their opt-in forms with the Court. *Id.* at 9.

7

However, Ms. Perez argues that in this case, the Court should toll the FLSA's statute of limitations because the Shucks Defendants failed to provide the lobster pickers with proper notice of their rights under the FLSA, in violation of 29 C.F.R. § 516.4. *Id.* at 5–6 (citing *Cruz v. Maypa*, 773 F. 3d 138, 146–47 (4th Cir. 2014)).  In addition, the Shucks Defendants "agreed with the various temp agencies that [the lobster pickers]…were not entitled to overtime, thereby actively hiding the fact of their violation" from their employees.  *Id.* at 6.  Thus, Ms. Perez urges the Court to toll the statute of limitations especially because many of the potential class members are immigrant workers who are less likely to be aware of their rights.  *Id.*

### B.   Defendants' Opposition

#### 1.   FLSA Conditional Certification

The Shucks Defendants largely agree with Ms. Perez's recitation of the standard for conditional certification, with one important difference.  The Shucks Defendants point out that although the standard is "fairly lenient," Ms. Perez must present more than mere allegations that other employees suffered from a common unlawful policy or plan.  *Defs.' Opp'n* at 3 (citing *Levecque v. Argo Marketing Group, Inc.*, No. 2:14-cv-00218-JAW, 2015 WL 3672647, at *7 (D. Me. June 12, 2015)).  That is, Ms. Perez has "the burden of showing a reasonable basis for [her] claim that there are other similarly situated employees.  *Id.* at 4 (quoting *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 234 (D. Me. 2011)).  To meet that burden, Ms. Perez must "produce some evidence that…individuals want to opt in to the lawsuit."  *Id.* (quoting *Levecque*, 2015 WL 3672647, at *7).

8

According to the Shucks Defendants, conditional certification is inappropriate here because Ms. Perez cannot identify "a single other worker interested in joining the lawsuit." *Id.* at 2. To the contrary, Ms. Perez admits that the other lobster pickers "with whom she has spoken have actually been disinclined to assert claims." *Id.* at 5 (emphasis omitted). The Shucks Defendants point out that the Court previously acknowledged the "chicken and egg" problem inherent in requiring a plaintiff "who does not know the identities of the members of the proposed class to provide information about class members' desire to opt-in[.]" *Id.* at 6 (quoting *Johnson*, 802 F. Supp. 2d at 237). However, the Court believed that the availability of preliminary discovery, along with a relatively light burden, would alleviate the problem. *Id.* (citing *Johnson*, 802 F. Supp. 2d at 237). In this case, the Shucks Defendants argue, Ms. Perez had the benefit of preliminary discovery, including depositions and payroll records, but she was still unable to name any other lobster pickers interested in joining the lawsuit. *Id.* at 7.

The Shucks Defendants also take issue with Ms. Perez's assertion that Shucks Lobster's relationships with multiple temp agencies created a "buffer" between the Shucks Defendants and the potential class members. *Id.* The Shucks Defendants argue that there is "no logical connection between Defendants' decision to contract [with temp agencies]…and Perez' ability to identify…potential class members[.]" *Id.* Moreover, they insist that Ms. Perez's buffer argument contradicts her First Amended Complaint, in which she contends that the various temp agencies employed the same core group of workers. *Id.*

9

Regarding Ms. Perez's argument that many of the potential class members are immigrants, the Shucks Defendants respond that there is no assertion that the Shucks Defendants or the temp agencies threatened potential class members or discouraged them from participating.  *Id.* at 8.  Additionally, the Shucks Defendants point out that "fear of retaliation is hardly a concern unique to immigrant workers." *Id.*

### 2.     Tolling the Statute of Limitations

The Shucks Defendants oppose Ms. Perez's efforts to equitably toll the FLSA's statute of limitations.  They explain that the First Circuit "has strictly construed the circumstances in which equitable tolling is appropriate," *id.* at 9, and that Courts should "employ equitable tolling sparingly."  *Id.* (citing *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999)).  According to the Shucks Defendants, equitable tolling is only appropriate where "a plaintiff exercising reasonable diligence could not have discovered information essential to the suit."  *Id.* (citing *Bernier v. Upjohn Co.*, 144 F.3d 178, 180 (1st Cir. 1998)).

Here, the Shucks Defendants argue, Ms. Perez "does not explain how, despite the exercise of reasonable diligence, she was unable to discover information essential to her claim."  *Id.*   Rather, she contends that the Shucks Defendants did not display a poster describing wage rights under federal or Maine law.  *Id.*   The Shucks Defendants highlight that a number of courts have held that a failure to post a notice of a worker's rights is insufficient to justify equitable tolling.  *Id.* at 10 (collecting

cases).  Thus, the Shucks Defendants argue that the Court should deny Ms. Perez's request for equitable tolling.  *Id.* at 10.

### C.    Plaintiff's Reply

#### 1.    FLSA Conditional Certification

Ms. Perez argues that she is not required to demonstrate that other lobster pickers are interested in joining her lawsuit to qualify for conditional certification. *Pl.'s Reply* at 1–4.  According to Ms. Perez, imposing such an "interest requirement" would force plaintiffs to issue their own informal notice before the Court has the ability to provide potential class members with fair and accurate notice.  *Id.* at 3 (citing *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007)). Moreover, imposing an "interest requirement" on the named plaintiff assumes that the plaintiff has "(a) the ability to communicate with a significant pool of potential class members; and (b) the named plaintiff is as persuasive and reassuring (and neutral) as the court in providing notice to potential class members."  *Id.* (citing *Quinn v. Endo Pharms, Inc.*, C.A. No. 10-11230, Order on Motion for Conditional Certification (D. Mass. June 1, 2011)).

Moreover, Ms. Perez asserts that an "interest requirement" would render conditional certification obsolete; there would be little to gain from court-ordered notice "if the named plaintiff, in order to obtain such notice, is required to have already consulted with a significant portion of the potential class[.]" *Id.*  Additionally, "[a]n interest requirement is too high a standard for conditional certification, especially taking into account the fact that there is a second stage for certification"

that permits a court to decertify a conditionally certified class. *Id.* (citing *Rossello v. Avon Products, Inc.*, No. 14 cv-1815, Order on Motion for Conditional Certification (D.P.R. Sept. 28, 2015); *Morrison v. Ocean State Jobbers, Inc.*, No. 3:09CV1285 (AWT), 2010 WL 1991553, at *6 (D. Conn. May 17, 2010)).

Ms. Perez acknowledges that, in certain instances, the Court has required the plaintiff to show that other potential members are interested in joining the lawsuit. *Id.* at 2 (citing *Johnson,* 802 F. Supp. 2d at 237–38). However, Ms. Perez insists that those circumstances are inapplicable here. *Id.* at 5. Ms. Perez attempts to distinguish *Johnson*, arguing that in that case, the named plaintiffs worked at their place of employment for several years and already knew many of the potential class members. *Id.* Even so, the named plaintiffs failed to identify any potential class members interested in joining the suit. *Id.* Thus, the Court held that in the absence of any identified interest from the potential class members, there was no need for the Court to provide notice because such notice would not provide any more information than the named plaintiffs already possessed. *Id.* In this case, on the other hand, Ms. Perez asserts that she only knows a small percentage of the potential plaintiffs, and she was able to contact an even smaller number. *Id.* Therefore, unlike in *Johnson*, there is a need for the Court to provide notice. *Id.*

Ms. Perez argues that notice from the Court is especially important here because many of the lobster pickers are seasonal immigrant laborers "who may speak and understand little to no English and generally who have a poor understanding of the legal protections to which they are entitled." *Id.* According to Ms. Perez, they are

"precisely the kind of employees that would respond to court approved notice that specifically points out the illegality of retaliation with more trust and regard than the recommendation of an individual coworker." *Id.* at 6.

## 2.   Tolling the Statute of Limitations

Ms. Perez explains that the Shucks Defendants' failure to post notice of employee rights is not the sole basis for equitable tolling. *Id.* at 7. Rather, that failure is part of the Shucks Defendants' larger effort to "avoid their responsibilities as employers" and "conceal their actual role in controlling [the lobster pickers'] work." *Id.* at 6–7. Ms. Perez contends that as part of that larger effort, the Shucks Defendants engaged several temp agencies to create a buffer between themselves and the lobster pickers. *Id.* In Ms. Perez' view, this larger scheme of "active concealment…certainly warrants equitable tolling." *Id.* (citing *Bonilla*, 194 F.3d at 278–79 (1st Cir. 1999) ("[E]quitable tolling is not appropriate unless a claimant misses a filing deadline because of circumstances effectively beyond her control (such as when her employer actively misleads her, and she relies on that misconduct to her detriment)") (emphasis omitted).

## III.   DISCUSSION

The Court will first discuss conditional certification. In particular, the Court will determine whether Ms. Perez must identify potential class members who are interested in joining her suit in order to secure conditional certification. The Court will also determine whether Ms. Perez and the other lobster pickers are "similarly situated" for purposes of conditional certification. Next, the Court will assess Ms.

Perez's proposed notice and opt-in forms.  Finally, the Court will turn to the issue of tolling the statute of limitations.

## A.      FLSA Conditional Certification

### 1.      Legal Standard for Conditional Certification

The FLSA requires employers to pay employees overtime wages for hours worked in excess of forty hours per week, unless an exception applies.  29 U.S.C. §§ 207(a)(1).  An employer who violates the overtime provisions of the FLSA is liable to the affected employees, who may bring a private right of action either individually or as part of a collective action on behalf of "themselves and other employees similarly situated."  29 U.S.C. § 216(b); *Saunders*, 2014 WL 580153, at *5.  An action does not become a collective action, however, "unless other plaintiffs affirmatively opt into the class by giving written and filed consent, and the trial court certifies that such opt-in plaintiffs are in fact similarly situated and that the collective action is procedurally manageable and fair."  *Saunders*, 2014 WL 580153, at *5 (quoting *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 362 (D. Me. 2010)).

The general practice of district courts within the First Circuit—including this Court—is to employ a two-tiered approach to the certification of collective actions under the FLSA.  *Johnson*, 802 F. Supp. 2d at 233 and n.5 (collecting cases).  The first stage "determines whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery, based only on the pleadings and any affidavits which have been submitted."  *Saunders*, 2014 WL 580153, at *6 (internal quotation marks omitted).  The second stage takes the form

14

of a motion to decertify after discovery has been completed, at which time the court must "make a factual determination as to whether there are similarly-situated employees who have opted in." *Id.*

This motion concerns the first stage, also known as "conditional certification." At this stage, named plaintiffs have "the burden of showing a reasonable basis for their claim that there are other similarly situated employees." *Id.* (quoting *Prescott*, 729 F. Supp. 2d at 364). Stated another way, the named plaintiffs must make "a modest factual showing" that they and "other employees, with similar but not necessarily identical jobs, suffered from a common unlawful plan." *Id.* (quoting *Johnson*, 802 F. Supp. 2d at 234). Various courts have described this standard as "'not particularly stringent,' 'fairly lenient,' 'flexible,' 'not heavy,' and 'less stringent than for joinder under Rule 20(a) or for separate trials under 42(b).'" *Id.* (quoting *Johnson*, 802 F. Supp. 2d at 234) (adopting the "fairly lenient" standard).

### 2. Interested Class Members

District courts around the Country—and within the First Circuit—have split as to whether a named plaintiff must identify the names of other potential class members who are interested in joining the lawsuit in order to secure conditional certification under the FLSA. Many courts grant conditional certification regardless of whether a named plaintiff demonstrates that other potential class members are actually interested in joining the lawsuit. *See Rossello v. Avon Prod., Inc.*, No. CIV. 14-1815 JAG/BJM, 2015 WL 3890403, at *12–14 (D.P.R. June 24, 2015), *report and recommendation adopted*, No. CIV. 14-1815 JAG, 2015 WL 5693018 (D.P.R. Sept. 28,

2015); *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *9 (E.D. Mich. Mar. 23, 2012); *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011); *Lyons v. Ameriprise Fin., Inc.*, No. 10–503, 2010 WL 3733565, at *5 (D. Minn. Sept. 20, 2010); *Heckler*, 502 F. Supp. 2d at 780; *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002).

However, in *Johnson*, this Court joined the Eleventh Circuit and numerous other district courts to hold that the identification of others interested in joining a putative class is a prerequisite for conditional certification.  802 F. Supp. 2d at 237 (collecting cases).  This Court held that, to achieve conditional certification, a named plaintiff must make a "minimum factual showing that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) *those individuals want to opt in to the lawsuit*."  802 F. Supp. 2d at 234 (quoting *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565, at *6 (S.D. Tex. Nov. 17, 2008)) (emphasis added).

*Johnson* set forth the Court's reasoning for imposing an interest requirement. The Court explained that if all the similarly situated individuals decline to opt in to the case, then conditionally certifying a collective action would have no purpose.  *Id.* at 237 (citing *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007)).  Furthermore, if a named plaintiff did not need to show some interest on the part of the other potential class members, then preliminary class certification would

be automatic as long as the complaint contained the words "other employees similarly situated." *Id.* (citing *Parker*, 492 F. Supp. 2d at 1165).

At the same time, the Court in *Johnson* recognized that imposing an interest requirement may present a "chicken and egg" problem. *Id.* at 238. That is, "[r]equiring an FLSA plaintiff who does not know the identities of the members of the proposed class to provide information about class members' desire to opt in could require the plaintiff to produce the very information that she sought to obtain through conditional certification and notice." *Id.* (quoting *Detho v. Bilal,* No. H-07-2160, 2008 WL 2962821, at *1 (S.D. Tex. July 29, 2008)). However, the Court determined that "the notice stage's light burden combined with any preliminary discovery a Court might allow, should be sufficient to alleviate such concerns." *Id.*

The Court did not perceive a substantial "chicken and egg" problem in *Johnson*. *Id.* In that case, two disc jockeys sued the owner of an adult entertainment club, alleging violations of the FLSA's minimum wage requirement. *Id.* at 230. In seeking conditional certification, both disc jockeys stated that they were "aware of other disc jockeys that work for [the owner] who are dissatisfied with receiving only half the minimum wage." *Id.* at 235. The Court denied the disc jockeys' request for conditional certification, holding that they failed to "specifically identify others interested in joining the putative class." *Id.* at 238. The Court found that the two disc jockeys had worked at the entertainment club for a combined twelve years and that the disc jockeys admitted knowing a number of the other disc jockeys well enough to be aware of their dissatisfaction with the pay system. *Id.* at 239. The Court

concluded that because the two disc jockeys already knew potential members of the putative class, they did not require a court order to identify and notify other potential members. *Id.* Moreover, their failure to identify a single interested class member—despite knowing several potential members—led the Court to determine that there was no interest, and thus conditional certification would serve no purpose. *Id.* Nevertheless, the Court permitted the disc jockeys to refile their motion in the event they were able to specifically identify interested class members. *Id.*

The facts of the present case are different from the situation the Court faced in *Johnson*. Here, it is not clear that Ms. Perez personally knows many of the potential class members. She worked at the Shucks Lobster facility for approximately three months in 2012 and again for a few weeks in 2015. She contends that she and the other lobster pickers spoke during breaks and while they worked. *Perez Decl.* ¶ 10. She also asserts that she spoke "with other pickers about joining this lawsuit." *Id.* ¶ 15. Even so, it is unlikely that Ms. Perez managed to speak with most, or even many, of the potential class members during these conversations. For instance, given the seasonal nature of the work, it is likely that many potentially aggrieved lobster pickers came and left in the years between Ms. Perez's two periods of employment. Additionally, Ms. Perez asserts that the lobster pickers spoke a number of languages. As such, it is not clear that Ms. Perez would even be able to communicate with a portion of potential class members. This contrasts with the situation in *Johnson*, where the Court found that the named plaintiffs worked at the club for a combined twelve years and knew a number of other disk jockeys well

enough to be aware of their potential interest in the lawsuit. *Johnson*, 802 F. Supp. 2d at 239. Unlike in *Johnson*, the facts of this case suggest that Ms. Perez may require a court order to identify potential members of the putative class who would otherwise remain unknown to her.

At the same time, the Shucks Defendants point out that both parties agreed to preliminary discovery, and that Ms. Perez subpoenaed "a substantial volume of agency payroll records and depos[ed] Shucks Maine Lobster LLC." *Defs.' Opp'n* at 6. Despite having access to employment records, Ms. Perez has still been unable to identify a single potential class member who is interested in joining the suit. *Id.* Indeed, the Shucks Defendants point out that "those with whom [Ms. Perez] has spoken have actually been disinclined to assert claims." *Id.* at 5 (emphasis omitted).

Yet the Shucks Defendants overestimate the power of preliminary discovery to alleviate the "chicken and egg" problem presented in this case. A named plaintiff in a *Johnson*-type case faces a problem because she cannot identify interested class members—and thus qualify for conditional certification—until the Court conditionally certifies the class and helps the named plaintiff identify and notify potential class members. In that situation, preliminary discovery, combined with a light burden, can alleviate the problem by helping to identify potential class members before the conditional certification occurs. *See Johnson*, 802 F. Supp. 2d at 238. Here, however, Ms. Perez claims that she is unable identify interested class members because the class members will not come forward without reassurance from the Court in the form of conditional certification. Ms. Perez asserts that many of the lobster

19

pickers are immigrants who may lack an understanding of their legal rights and their protections as employees.  Conditional certification and notice from the Court, Ms. Perez argues, could help reassure otherwise hesitant employees, and they may come forward.  Preliminary discovery and a light burden alone would not significantly alleviate this problem.

The Shucks Defendants do not dispute that, in this case, many of the lobster pickers are immigrants who may speak little or no English and who may lack an understanding of their legal rights.  These employees may not know that they could be entitled to overtime, and they may not realize that the laws of this Country protect them from retaliation for asserting their rights.

The Court agrees with Ms. Perez that it may well be very difficult for her, relying on the tools of discovery alone, to convince a group of seasonal immigrant employees to come forward with a claim against their employer.  Notice of the lawsuit, approved and distributed with the authority of the Court, may be sufficient to both notify potential class members who are unaware of the lawsuit or their rights, and embolden others who know of the suit but are unaware of the employment protections that this Country affords them.  Therefore, given the unique facts of this case, and addressing this initial issue alone, the Court concludes that conditional certification and notice are appropriate.

Finally, the Court notes that *Johnson* itself permits some breathing room with respect to the interest requirement.  The Court in *Johnson* recognized that "an overly rigid and inflexible analysis risks the creation of a Catch-22, wherein Plaintiffs need

to identify and notify members of the putative class before seeking a court order to allow for identification and notification." *Id.* at 238 (citing *Wise v. Patriot Resorts Corp.*, C.A. No. 04-30091-MAP, 2006 WL 6110885, at *1 (D. Mass. Feb. 15, 2006)). Sometimes, as in this case, a Court may conclude that preliminary discovery, combined with a light burden, is not enough to address the problems that follow from requiring a named plaintiff to identify potential class members interested in joining the lawsuit. In those select cases, the Court may choose to conditionally certify a collective action despite no showing of interest with the understanding the Court may decertify the action upon a defendant's motion after discovery is complete.

### 3.    Similarly Situated Employees

Before the Court grants conditional certification, it must determine whether the members of the putative class are "similarly situated." Although the precise contours of "similarly situated" remain undefined, the analysis generally focuses on whether employees "have similar (not identical) job duties and pay provisions…and are victims of a common policy or plan that violated the law." *Prescott*, 729 F. Supp. 2d at 363–64 (internal quotation marks and citations omitted). Ms. Perez must make "a modest factual showing" that she and the other employees with similar jobs suffered from a common unlawful plan. *Saunders*, 2014 WL 580153, at *6.

Ms. Perez defines the putative class as "[a]ll current and former employees of Shucks Lobster and/or any agent hired by Shucks Lobster since May 2012 who worked shucking cooked lobsters at Shucks Maine's facility in Richmond, Maine and who worked, when all waiting time is included, more than forty (40) hours per week."

21

*Pl.'s Mot.* at 8.  The Shucks Defendants do not dispute that Ms. Perez and the other lobster pickers are similarly situated.  In any event, the Court believes that Ms. Perez has met the "fairly lenient" burden to show that she and the other lobster pickers are similarly situated for purposes of conditional certification.  She estimates that she worked with between ten and twenty different lobster pickers each day, and that over the course of her time at the Shucks Lobster facility, she worked with between thirty and forty people in total.  *Perez Decl.* ¶¶ 8–9.  She reports that the job of a lobster picker is to shuck lobster meat from the shell.  *Id.* ¶ 3.  Neither party contends that job duties varied among different lobster pickers.  Moreover, Ms. Perez was in a position to observe the responsibilities and work conditions of other lobster pickers. She states that she and the other lobster pickers often had to wait fifteen and thirty minutes before the lobster was ready for shucking.  *Id.* ¶ 11.  Also, she asserts that she and the other lobster pickers were all required to pass through the "clean room" each time they entered or exited the shucking room.  *Id.* ¶ 13.  Thus, there is sufficient evidence in this record to conclude that the lobster pickers working at the Shucks Lobster facility possessed similar job duties.

Additionally, based on her alleged conversations with her co-workers at work and during break, Ms. Perez asserts that the other lobster pickers did not receive overtime pay.  *Id.* ¶ 10.  Hence, it appears that the lobster pickers as a group also suffered from a common policy or plan that violated the law.  The Court therefore concludes that, based on her personal observations and her conversations with co-workers, Ms. Perez has made a sufficient factual showing that the lobster pickers

22

employed at the Shucks Lobster facility are a similarly situated group and, as alleged by Ms. Perez, have suffered from a common unlawful plan. The Court concludes that conditional certification is appropriate.

### B.     Court-Ordered Notice

Although the FLSA does not expressly provide for court-ordered notice of a pending collective action, the Supreme Court has held that "district courts have discretion…to implement 29 U.S.C. 216(b)…by facilitating notice to potential plaintiffs." *Prescott*, 729 F. Supp. 2d at 362–63 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)); *Johnson*, 802 F. Supp. 2d at 233. Ms. Perez requests that the Court review and approve her proposed notice and opt-in forms informing potential plaintiffs of their rights, as part of the Court's "managerial responsibility to oversee the joinder of additional parties to ensure that the task is accomplished in an efficient and proper way." *Pl.'s Mot.* at 8 (quoting *Sperling*, 493 U.S. at 170–71); *see Pl.'s Mot.* Attach 2 *Notice of Pendency of FLSA Collective Lawsuit* at 2 (ECF No. 41) (*Notice of Pendency*); *Pl.'s Mot.* Attach 3 *Opt-In Consent Form* (ECF No. 41) (*Consent Form*). Ms. Perez also argues that the Court should order the Shucks Defendants to prominently post the notice in the shucking room and the attached break room, to distribute the notice to all current pickers, and to make available the names and last known addresses of all the putative class members with the understanding that Ms. Perez would protect such information. *Pl.'s Mot.* at 8–9 (citing *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145 (NRB), 2010 U.S. Dist. LEXIS 114743, at *18, 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010)).

Additionally, Ms. Perez also urges the Court to order the Shucks Defendants to post the notice in English, Spanish, and Khmer. *Id.* at 9.

The Shucks Defendants have not addressed these issues, and the Court concludes they have waived any arguments against Ms. Perez's request. However, under the guidance provided in *Sperling*, the Court reviewed the notice forms to ensure that they are not an endorsement of any action and that the notice is fair and factual in all respects. *See generally Sperling*, 493 U.S. at 174 ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action"). The Court finds that Ms. Perez's proposed notice of pendency and consent forms are appropriate.[1] Ms. Perez may translate the notice of pendency and consent forms into Spanish and Khmer at her expense and provide them to the Shucks Defendants by November 10, 2016. The Court orders the Shucks Defendants to prominently post

---

[1]    Paragraph 5 of the notice form states:

> 5.    THE COURT EXPRESSES NO OPINION ON THE MERITS OF THIS LAWSUIT
>
> Although the court has approved the sending of this notice, it expresses no opinion on the merits of this lawsuit. The Court has not determined that Shucks Maine Lobster, LLC or John Hathaway are employers of those directly hired by the temporary employment agencies Shucks Maine Lobster contracts with to staff its facility in Richmond, ME, nor has the Court determined that Shucks Maine Lobster, LLC or John Hathaway have failed to comply with the Fair Labor Standards Act. There is no money currently available from this lawsuit to plaintiffs (or to persons receiving this notice) and there is no guarantee that the plaintiffs (or the person receiving this notice) will recover any money by joining this lawsuit.

*Notice of Pendency* at 3–4.

the notice, including any Spanish or Khmer translations that Ms. Perez provides, in the room where the pickers shuck the lobsters, as well as any break rooms that the lobster pickers use.  The Court also orders the Shucks Defendants to distribute copies of the notice of pendency and consent forms to the lobster pickers who currently work at the Richmond facility.  The Shucks Defendants shall post and distribute the notice and consent forms by November 17, 2016.

The Court also directs the Shucks Defendants to identify by November 17, 2016, in a computer readable data file, information relating to all workers who picked lobsters for Shucks Maine Lobster LLC since Ms. Perez's first day of work in May 2012.  This information must include all potential opt-in plaintiffs' names, last known mailing addresses, and dates of employment.  Further, the Plaintiffs must properly safeguard the information provided by the Shucks Defendants, and the Court directs the parties to enter into a confidentiality agreement no later than November 10, 2016. *See In re Penthouse*, 2010 U.S. Dist. LEXIS 114743, at *20.

### C.   Tolling the Statute of Limitations

An action to enforce the overtime provisions of the FLSA has a two-year statute of limitations period, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  An action is "commenced" on the date the complaint is filed.  29 U.S.C. § 256.  In a collective action, an opt-in claimant's action is commenced when the claimant files consent. 29 U.S.C § 256(b).

Ms. Perez urges the Court to equitably toll the statute of limitations from the start of her employment in May 2012 because the Shucks Defendants "expended every effort to avoid their responsibilities as employers[.]" *Pl.'s Reply* at 6. Ms. Perez alleges that as part of these efforts, the Shucks Defendants failed to post notice of the lobster picker's overtime rights under the FLSA. *Id.* at 7; *Pl.'s Mot.* at 5–6. The Shucks Defendants argue that whether or not they complied with the FLSA posting regulations, the Court should not equitably toll the limitations period because "the [federal overtime] statute itself gave Perez constructive notice of her rights, and Perez has failed to allege, let alone demonstrate, that she was unable, despite reasonable diligence, to assert her claim within the applicable limitations period." *Defs.' Opp'n* at 10.

"Statutory filing deadlines are presumptively subject to equitable tolling[,]" *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004), unless Congress intended to preclude equitable tolling or the deadline defines the Court's jurisdiction. *Id.* "To preserve the usefulness of statutes of limitations as rules of law, equitable tolling should be invoked only 'sparingly.'" *Ramos-Martinez v. U.S.*, 638 F.3d 315, 322 (1st Cir. 2011). Equitable tolling is "unavailable to excuse a party who has failed to exercise due diligence." *Meng Hua Wan v. Holder*, 776 F.3d 52, 58 (1st Cir. 2015). Equitable tolling is "the exception rather than the rule…[and] resort to its prophylaxis is deemed justified only in extraordinary circumstances." *Holmes v. Spencer*, 685 F.3d 51, 62 (1st Cir. 2012) (alteration in original). "This means that, at a minimum, equitable tolling is appropriate only when circumstances beyond the

26

petitioner's control have prevented him from filing on time." *Neverson*, 366 F.3d at 42.

The question is whether the Shucks Defendants' conduct—in particular, their alleged failure to post the required FLSA notice—justifies equitable tolling of the statutory period. The parties do not identify, and the Court is unable to locate, any controlling precedent. A survey of other jurisdictions reveals a split of authority. Some jurisdictions hold that the failure to post FLSA notice is not grounds to equitably toll the statute of limitations. *See Archer v. Sullivan County, Tenn.*, 129 F.3d 1263 (6th Cir. 1997) (holding that an employer's failure to provide notice of employee rights under the FLSA does not alone provide a basis for equitable tolling); *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527 (11th Cir. 1983) (refusing to equitably toll the Age Discrimination in Employment Act's (ADEA) statute of limitations based on a failure to post the required notice because the notice did not advise employees of the statute of limitations).

However, these jurisdictions appear to be in the minority. Instead, "the trend regarding the failure to post FLSA notices is more flexible and permits equitable tolling where the plaintiff did not consult with counsel during his employment and the employer's failure to pose notice is not in dispute." *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 698 (D. Conn. Aug. 28, 2008) (collecting cases). *See also Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014) (equitably tolling the FLSA statute of limitations on behalf of an immigrant employee where the employer failed to post statutory notice of her FLSA rights); *Bonham v. Dressler Industries, Inc.*, 569 F.2d

27

187, 193 (3rd Cir. 1977) (holding that an employer's failure to post notice under the ADEA tolled the statute of limitations because the posting requirements were adopted to protect people who might be unaware of the act's existence); *Kamens v. Summit Stainless Inc.*, 586 F. Supp. 324 (E.D. Pa. 1984) (extending *Bonham* to an employer's failure to post notice under the FLSA); *Cisneros v. Jinny Beauty Supply Co., Inc.,* No. 03 C 1453, 2004 WL 524482, at *1 (N.D. Ill. Feb. 6, 2004) ("[A]n employer's failure to post the notice required by 29 C.F.R. § 516.4 tolls the FLSA statute of limitations until an employee acquires a general awareness of his rights under the FLSA"); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) (holding that equitable tolling was appropriate where an employer concealed employee rights by failing to post required FLSA notices).

At this juncture, the Court joins the majority of jurisdictions in holding that the failure to post the required FLSA notices is an "extraordinary circumstance" that permits the Court to equitably toll the statute of limitations.  However, the Court reserves ultimate judgment on this issue because the Court does not have a sufficient factual basis to determine whether the Shucks Defendants actually posted the required FLSA notice.  For purposes of conditional certification only, the Court grants Ms. Perez's request to toll the statutory period from the date of her first employment with Shucks Lobster in May 2012.  *See Prescott*, 729 F. Supp. 2d at 370 ("At this stage…, justice is best served by notice reaching the largest number of potential plaintiffs . . . .").  The Shucks Defendants will have the opportunity to renew their

argument regarding equitable tolling in a motion to decertify the class at the conclusion of discovery.

## IV.  CONCLUSION

The Court GRANTS Ms. Perez's Motion for Conditional Certification and Provision of Notice Under 29 U.S.C. § 216(b) (ECF No. 41).  The Court adopts Ms. Perez's definition of the putative class: "All current and former employees of Shucks Lobster and/or any agent hired by Shucks Lobster since May 2012 who worked shucking cooked lobsters at Shucks Maine's facility in Richmond, Maine and who worked, when all waiting time is included, more than forty (40) hours per week."  The Court makes the following ORDERS:

1)  The Shucks Defendants shall deliver to Ms. Perez a computer readable data file by November 17, 2016, containing information relating to all workers who picked lobsters for Shucks Maine Lobster LLC since Ms. Perez's first day of work at the Richmond facility in May 2012.  This information shall include the workers' names, last known mailing addresses, and dates of employment.

2)  The parties shall enter into a confidentiality agreement concerning the computer readable data file no later than November 10, 2016.

3)  Ms. Perez may translate the notice and consent forms into Spanish and Khmer at her own expense.  Ms. Perez shall transmit the notice and opt-in forms to the Shucks Defendants by November 10, 2016.

4)  The Shucks Defendants shall prominently post the notice, including any Spanish or Khmer translations that Ms. Perez provides, in the room where the

pickers shuck the lobsters, as well as any break rooms that the lobster pickers use.  The Shucks Defendants shall distribute paper copies of the notice and consent forms to the lobster pickers who currently work at the Richmond facility.  The Shucks Defendants shall post and distribute the notice and consent forms by November 17, 2016.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2016

30